IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HOLLY PIERCE<br>c/o Chris P. Wido, Esq<br>The Spitz Law Firm, LLC<br>25825 Science Park Drive, Ste 200<br>Beachwood, Ohio, 44122<br><br>　　On behalf of herself and all others<br>　　similarly-situated<br><br>　　　　　　　　　　Plaintiff,<br><br><br><br><br><br><br><br><br><br><br><br>　　　　　　v.<br><br>WASH WAG, LLC.<br>c/o Mark E. Lyden, Statutory Agent<br>10346 Brecksville Road,<br>Brecksville, Ohio, 44141<br><br>　　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COLLECTIVE ACTION<br>COMPLAINT FOR VIOLATIONS<br>OF THE FAIR LABOR STANDARDS<br>ACT**<br><br>**AND**<br><br>**COLLECTIVE ACTION<br>COMPLAINT FOR VIOLATION OF<br>THE OHIO FAIR MINIMUM WAGE<br>STANDARDS ACT**<br><br>(Jury Demand Endorsed Herein) |

## INTRODUCTION.

Through a company-wide failure to pay employees one-and-a-half times their pay for all hours worked over forty in a given work week, Defendant Wash Wag, LLC ("Wash Wag") systematically failed to pay Plaintiffs Holly Pierce and other similarly-situated employees the proper overtime rate. Accordingly, Wash Wag's conduct violated the Fair Labor Standards Act ("FLSA"), 29 U.S. Code § 207. On behalf of herself and all other similarly

situated employees, Plaintiff brings this collective action for the recovery of unpaid minimum overtime wages under the FLSA, 29 U.S.C. § 216(b). Members of the collective action are referred to as the "FLSA Collective Class Members." Additionally, Plaintiff brings this collective action under Ohio Minimum Fair Wage Standards Act ("OMFWSA"), Ohio R.C. § 4111.03, on behalf of herself and all FLSA Collective Class Members who worked for Wash Wag in Ohio ("Ohio Collective Action"). Members of the Ohio Collective Action are referred to as the "Ohio Collective Class Members." The following allegations are based upon information and belief, or personal knowledge as to Plaintiff's own conduct and the conduct and acts of others.

## PARTIES.

1. Pierce is an individual residing in Portage County, Ohio. Pierce performed work for Defendant within the last three years for which she was not paid the overtime wages guaranteed by the FLSA. Pierce's signed consent to sue form is attached hereto as Exhibit "A."

2. The FLSA Collective Class Members are all current and former employees of Wash Wag who (1) worked at Wash Wag's location in Ohio, (2) were paid on an hourly basis, and (3) worked 40 or more hours during any single week of their employment.

3. The Ohio Collective Class Members and who worked for Defendant for any period of time during the three-year period immediately preceding the filing of this Complaint to present who were not paid all overtime wages due.

4. Defendant Wash Wag, LLC is a domestic corporation with its principal place of business located in Summit County, Ohio.

5. During all times material to this Complaint, Wash Wag was Plaintiff's and members of the opt-in classes' "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

## PERSONAL JURISDICTION.

6. Wash Wag is an Ohio Corporation; hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Wash Wag comports with due process.

7. This cause of action arose from or relates to the contacts of Wash Wag with Ohio residents, thereby conferring specific jurisdiction over Wash Wag.

## SUBJECT MATTER JURISDICTION AND VENUE.

8. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. Venue is proper in this District because Wash Wag's principal place of business is located in this District and the wrongs herein alleged occurred in this District.

## FLSA COVERAGE.

10. At all times referenced herein, Wash Wag was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

11. At all times material to the Complaint, Plaintiff and those similarly-situated directly participated in the actual movement of things in interstate commerce as part of their regular job duties and were subject to individual coverage under the FLSA.

### OMFWSA COVERAGE.

12. At all times referenced herein, Wash Wag had a gross annual income of over $150,000.00, subjecting it to the overtime requirements of the OMFWSA.

### FACTUAL ALLEGATIONS.

### (Defendant Wash Wag).

13. Wash Wag is a full service pet groomer.

14. At all times referenced herein, Wash Wag employed non-exempt, hourly employees to work at its stores.

15. At all times referenced herein, Wash Wag did not pay overtime to employees who worked more than 40 hours in a given week.

16. At all times referenced herein, Wash Wag paid hourly employees a flat, "straight time" hourly rate for all hours worked, including those hours worked over 40 in a single workweek.

17. Wash Wag's repeated violations of the FLSA evidence that the violation of the FLSA discussed herein was willful, reckless, and committed by Wash Wag without a good faith belief that its conduct complied with the overtime requirements of the FLSA.

### (Plaintiff Holly Pierce).

18. Pierce is a former employee of Wash Wag

19. Pierce hired by Wash Wag in or around April of 2019.

20. Pierce worked for Wash Wag as a Dog Groomer at Wash Wag's Akron location.

21. At all times referenced herein, Pierce was paid on an hourly basis and was non-exempt from the overtime requirements of the FLSA.

22. At all times referenced herein, Pierce regularly worked in excess of 40 hours per week.

23. At all times referenced herein, Wash Wag did not pay Pierce overtime at a rate of one-and-one-half times in excess of 40 hours per week, in violation of the FLSA and the OMFWSA.

24. One such example of Defendant's failure to pay Pierce overtime occurred during the pay period of September 6, 2020, through September 19, 2020, attached as Exhibit "B"

25. During the pay period of September 6, 2020, through September 19, 2020, Pierce worked 92.2 hours for Defendant.

26. Defendants paid Pierce a total of $1,015.72 for 92.2 hours of work during the pay period of September 6, 2020, through September 19, 2020.

27. During the pay period of September 6, 2020, through September 19, 2020, Defendant paid Pierce for 92.2 hours at a straight time rate of $11.00 per hour.

28. Defendant did not pay Pierce overtime for the hours she worked in excess of 40 hours in a workweek during the pay period of September 6, 2020, through September 19, 2020.

29. During the pay period of September 20, 2020, through October 3, 2020, Pierce worked 85.08 hours for Defendant, attached as Exhibit "C."

30. Defendants paid Pierce a total of $936.53 for the 85.08 hours of work during the pay period of September 20, 2020, through October 3, 2020.

31. During the pay period of September 20, 2020, through October 3, 2020, Defendant paid Pierce her 85.08 hours worked in straight time.

32. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of September 20, 2020, through October 3, 2020.

33. During the pay period of October 4, 2020, through October 17, 2020, Pierce worked 84.58 hours for Defendant, attached as Exhibit "D."

34. Defendants paid Pierce of $934.63 for the 84.58 hours of work during the pay period of October 4, 2020, through October 17, 2020.

35. During the pay period of October 4, 2020, through October 17, 2020, Defendant paid Pierce her 84.58 hours worked in straight time.

36. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of October 4, 2020, through October 17, 2020.

37. During the pay period of October 18, 2020, through October 31, 2020, Pierce worked 90.19 hours for Defendant, attached as Exhibit "E."

38. Defendants paid Pierce of $993.47 for the 90.19 hours of work during the pay period of October 18, 2020, through October 31, 2020.

39. During the pay period of October 18, 2020, through October 31, 2020, Defendant paid Pierce her 90.19 hours worked in straight time.

40. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of October 18, 2020, through October 31, 2020.

41. During the pay period of November 15, 2020, through November 28, 2020, Pierce worked 86.27 hours for Defendant, attached as Exhibit "F."

42. Defendants paid Pierce of $950.90 for the 90.19 hours of work during the pay period of November 15, 2020, through November 28, 2020.

43. During the pay period of November 15, 2020, through November 28, 2020, Defendant paid Pierce her 86.27 hours worked in straight time.

44. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of November 15, 2020, through November 28, 2020.

45. During the pay period of November 29, 2020, through December 12, 2020, Pierce worked 114.32 hours for Defendant, attached as Exhibit "G."

46. Defendants paid Pierce of $1259.89 for the 114.32 hours of work during the pay period of November 29, 2020, through December 12, 2020.

47. During the pay period of November 29, 2020, through December 12, 2020, Defendant paid Pierce her 114.32 hours worked in straight time.

48. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of November 29, 2020, through December 12, 2020.

49. During the pay period of December 13, 2020, through December 26, 2020, Pierce worked 93.03 hours for Defendant, attached as Exhibit "H."

50. Defendants paid Pierce of $1023.63 for the 93.03 hours of work during the pay period of December 13, 2020, through December 26, 2020.

51. During the pay period of December 13, 2020, through December 26, 2020, Defendant paid Pierce her 93.03 hours worked in straight time.

52. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of December 13, 2020, through December 26, 2020.

53. During the pay period of January 10, 2021, through January 23, 2021, Pierce worked 100.01 hours for Defendant, attached as Exhibit "I."

54. Defendants paid Pierce of $1100.16 for the 100.01 hours of work during the pay period of January 10, 2021, through January 23, 2021.

55. During the pay period of January 10, 2021, through January 23, 2021, Defendant paid Pierce her 100.01 hours worked in straight time.

56. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of January 10, 2021, through January 23, 2021.

57. During the pay period of January 24, 2021, through February 6, 2021, Pierce worked 84.42 hours for Defendant, attached as Exhibit "J."

58. Defendants paid Pierce of $931.70 for the 84.42 hours of work during the pay period of January 24, 2021, through February 6, 2021.

59. During the pay period of January 24, 2021, through February 6, 2021, Defendant paid Pierce her 84.42 hours worked in straight time.

60. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of January 24, 2021, through February 6, 2021.

61. During the pay period of February 7, 2021, through February 20, 2021, Pierce worked 96.00 hours for Defendant, attached as Exhibit "K."

62. Defendants paid Pierce of $1056.00 for the 96.00 hours of work during the pay period of February 7, 2021, through February 20, 2021.

63. During the pay period of February 7, 2021, through February 20, 2021, Defendant paid Pierce her 96.00 hours worked in straight time.

64. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of February 7, 2021, through February 20, 2021.

65. During the pay period of February 21, 2021, through March 6, 2021, Pierce worked 105.00 hours for Defendant, attached as Exhibit "L."

66. Defendants paid Pierce of $1155.00 for the 105.00 hours of work during the pay period of February 21, 2021, through March 6, 2021.

67. During the pay period of February 21, 2021, through March 6, 2021, Defendant paid Pierce her 105.00 hours worked in straight time.

68. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of February 21, 2021, through March 6, 2021.

69. During the pay period of March 7, 2021, through March 20, 2021, Pierce worked 96.20 hours for Defendant, attached as Exhibit "M."

70. Defendants paid Pierce of $1059.67 for the 96.20 hours of work during the pay period of March 7, 2021, through March 20, 2021.

71. During the pay period of March 7, 2021, through March 20, 2021, Defendant paid Pierce her 96.20 hours worked in straight time.

72. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of March 7, 2021, through March 20, 2021.

73. During the pay period of March 21, 2021, through April 3, 2021, Pierce worked 116.09 hours for Defendant, attached as Exhibit "N."

74. Defendants paid Pierce of $1277.65 for the 116.09 hours of work during the pay period of March 21, 2021, through April 3, 2021.

75. During the pay period of March 21, 2021, through April 3, 2021, Defendant paid Pierce her 116.09 hours worked in straight time.

76. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of March 21, 2021, through April 3, 2021.

77. During the pay period of June 27, 2021, through July 10, 2021, Pierce worked 81.09 hours for Defendant, attached as Exhibit "O."

78. Defendants paid Pierce of $892.65 for the 81.09 hours of work during the pay period of June 27, 2021, through July 10, 2021.

79. During the pay period of June 27, 2021, through July 10, 2021, Defendant paid Pierce her 81.09 hours worked in straight time.

80. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of June 27, 2021, through July 10, 2021.

81. During the pay period of July 11, 2021 through July 24, 2021, Pierce worked 85.15 hours for Defendant, attached as Exhibit "P."

82. Defendants paid Pierce of $937.75 for the 85.15 hours of work during the pay period July 11, 2021, through July 24, 2021.

83. During the pay period of July 11, 2021, through July 24, 2021, Defendant paid Pierce her 85.15 hours worked in straight time.

84. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of July 11, 2021, through July 24, 2021.

85. During the pay period of July 25, 2021, through August 7, 2021, Pierce worked 83.42 hours for Defendant, attached as Exhibit "Q."

86. Defendants paid Pierce of $920.70 for the 83.42 hours of work during the pay period July 25, 2021, through August 7, 2021.

87. During the pay period of July 25, 2021, through August 7, 2021, Defendant paid Pierce her 83.42 hours worked in straight time.

88. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of July 25, 2021, through August 7, 2021.

89. During the pay period of August 8, 2021, through August 21, 2021, Pierce worked 87.32 hours for Defendant, attached as Exhibit "R."

90. Defendants paid Pierce of $962.87 for the 87.32 hours of work during the pay period August 8, 2021, through August 21, 2021.

91. During the pay period of August 8, 2021, through August 21, 2021, Defendant paid Pierce her 87.32 hours worked in straight time.

92. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of August 8, 2021, through August 21, 2021.

93. During the pay period of October 3, 2021, through October 16, 2021, Pierce worked 81.32 hours for Defendant, attached as Exhibit "S."

94. Defendants paid Pierce of $896.87 for the 81.32 hours of work during the pay period October 3, 2021, through October 16, 2021.

95. During the pay period of October 3, 2021, through October 16, 2021, Defendant paid Pierce her 81.32 hours worked in straight time.

96. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of October 3, 2021, through October 16, 2021.

97. During the pay period of July 10, 2022, through July 23, 2022, Pierce worked 84.37 hours for Defendant, attached as Exhibit "T."

98. Defendants paid Pierce of $1099.92 for the 84.37 hours of work during the pay period July 10, 2022, through July 23, 2022.

99. During the pay period of July 10, 2022, through July 23, 2022, Defendant paid Pierce her 84.37 hours worked in straight time.

100. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of July 10, 2022, through July 23, 2022.

101. During the pay period of July 24, 2022, through August 6, 2022, Pierce worked 85.28 hours for Defendant, attached as Exhibit "U."

102. Defendants paid Pierce of $1110.98 for the 85.28 hours of work during the pay period July 24, 2022, through August 6, 2022.

103. During the pay period of July 24, 2022, through August 6, 2022, Defendant paid Pierce her 85.28 hours worked in straight time.

104. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of July 24, 2022, through August 6, 2022.

105. During the pay period of August 21, 2022, through September 3, 2022, Pierce worked 88.05 hours for Defendant, attached as Exhibit "V."

106. Defendants paid Pierce of $1145.08 for the 88.05 hours of work during the pay period August 21, 2022, through September 3, 2022.

107. During the pay period of August 21, 2022, through September 3, 2022, Defendant paid Pierce her 88.05 hours worked in straight time.

108. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of August 21, 2022, through September 3, 2022.

109. During the pay period of September 4, 2022, through September 17, 2022, Pierce worked 81.50 hours for Defendant, attached as Exhibit "W."

110. Defendants paid Pierce of $1063.80 for the 81.50 hours of work during the pay period September 4, 2022, through September 17, 2022.

111. During the pay period of September 4, 2022, through September 17, 2022, Defendant paid Pierce her 81.50 hours worked in straight time.

112. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of September 4, 2022, through September 17, 2022.

113. During the pay period of September 18, 2022, through October 1, 2022, Pierce worked 87.31 hours for Defendant, attached as Exhibit "X."

114. Defendants paid Pierce of $1137.72 for the 87.31 hours of work during the pay period September 18, 2022, through October 1, 2022.

115. During the pay period of September 18, 2022, through October 1, 2022, Defendant paid Pierce her 87.31 hours worked in straight time.

116. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of September 18, 2022, through October 1, 2022.

117. During the pay period of October 16, 2022, through October 29, 2022, Pierce worked 86.44 hours for Defendant, attached as Exhibit "Y."

118. Defendants paid Pierce of $1127.44 for the 86.44 hours of work during the pay period October 16, 2022, through October 29, 2022.

119. During the pay period of October 16, 2022, through October 29, 2022, Defendant paid Pierce her 86.44 hours worked in straight time.

120. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of October 16, 2022, through October 29, 2022.

121. During the pay period of October 30, 2022, through November 12, 2022, Pierce worked 99.27 hours for Defendant, attached as Exhibit "Z."

122. Defendants paid Pierce of $1292.79 for the 99.27 hours of work during the pay period October 30, 2022, through November 12, 2022.

123. During the pay period of October 30, 2022, through November 12, 2022, Defendant paid Pierce her 99.27 hours worked in straight time.

124. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of October 30, 2022, through November 12, 2022.

125. During the pay period of November 13, 2022, through November 26, 2022, Pierce worked 85.31 hours for Defendant, attached as Exhibit "AA."

126. Defendants paid Pierce of $1111.70 for the 85.31 hours of work during the pay period November 13, 2022, through November 26, 2022.

127. During the pay period of November 13, 2022, through November 26, 2022, Defendant paid Pierce her 85.31 hours worked in straight time.

128. Defendant did not pay Pierce overtime, for the hours she worked in excess of 40 hours in a workweek during the pay period of November 13, 2022, through November 26, 2022.

129. On or about December 8, 2022, Pierce resigned from her employment with Wash Wag.

130. Pierce notified Sharon O'Brien ("O'Brien") owner of Wash Wag, of her resignation via a written note and a text message on or about December 8, 2022.

131. In response to Pierce's resignation, O'Brien responded via text (attached to this complaint as Exhibit "BB") and informed Pierce Wash Wag will withhold Pierce's final paycheck.

132. At the date of this Complaint, Wash Wag has not provided Pierce with her final paycheck.

133. As a result of Wash Wag's failure to pay Pierce the proper overtime rate, Pierce has suffered damages.

134. As a result of Wash Wag's failure to pay Pierce minimum wage for all hours worked, Pierce has suffered damages.

135. As a result of Wash Wag's failure to pay Pierce all wages for all hours worked, Pierce has suffered damages.

## **COLLECTIVE ACTION ALLEGATIONS**.

136. Pierce incorporates by reference each of the allegations in the preceding paragraphs.

137. At all times referenced herein, Wash Wag employed numerous hourly employees like Pierce who worked in excess of 40 hours per week at their sole location in Ohio.

138. During her employment with Wash Wag, Pierce discussed her pay with other employees and learned that no one was being paid overtime.

139. Pierce brings this as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all similarly-situated individuals who are part of the following class:

> All current and/or former employees of Wash Wag, who were employed by Wash Wag for any period of time during the three years immediately preceding the filing of this Complaint, who were paid on an hourly basis.

140. Additionally, Pierce brings this as a collective action for all members of the FLSA Collective Class Members who worked in Ohio under O.R.C. § 4111.10(C)

141. Wash Wag's practice of not paying their employees hourly, non-exempt employees overtime was not limited to Pierce and effected all members of the putative collective similarly.

142. Collective Action treatment of Pierce's FLSA claim is appropriate because Pierce and the FLSA Collective Class Members have been subjected to the same company-wide, common business practice referenced in Paragraphs 13-17 of the foregoing Complaint and the success of their claims depends on the resolution of common issues of law and fact, including, *inter*

*alia*, whether Wash Wag's company-wide practices failed to properly compensate the FLSA Collective Class Members for all hours worked.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT.

143. Pierce re-alleges and incorporates by reference the allegations set forth in paragraphs 1-142, above.

144. The FLSA requires each covered employer, such as Wash Wag, to compensate all non-exempt employees at a rate of not less than one-and-one-half times the regular rate of pay for work performed in excess of 40 hours in a work week.

145. Pierce and the FLSA Collective Class Members were not exempt from the right to receive overtime pay under the FLSA during their employment with Wash Wag.

146. Pierce and the FLSA Collective Class Members are entitled to be paid overtime compensation for all overtime hours worked.

147. At all times relevant to this Complaint, Wash Wag had a policy and practice of failing to pay the proper overtime rate to its hourly employees by failing to calculate overtime pay at one-and-one-half the employee's hourly rate.

148. Wash Wag either recklessly failed to investigate whether its failure to pay Pierce and the FLSA Collective Class Members the proper overtime rate violated the Federal Wage Laws of the United States; it intentionally misled Pierce and the FLSA Collective Class Members to believe that Wash Wag was paying overtime correctly, and/or Wash Wag concocted a scheme pursuant to which it deprived Pierce and the FLSA Collective Class Members of the overtime pay they earned.

149. Wash Wag's failure and refusal to pay Pierce and the FLSA Collective Class Members the proper overtime wage for all overtime hours worked was willful, intentional, and not in good faith.

150. Pierce and the FLSA Collective Class Members are entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

**COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. §§ 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.**

151. Pierce re-allege and incorporate by reference the allegations set forth in paragraphs 1-142, above.

152. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

153. Wash Wag failed to pay Pierces and the Ohio Collective Class Members the proper overtime rate for hours they worked over 40 each week.

154. In denying Pierce and the Ohio Collective Class Members all overtime compensation they were due, Wash Wag violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

155. As a direct and proximate result of Wash Wag's unlawful conduct, Pierce and the Ohio Collective Class Members have suffered and will continue to suffer a loss of income.

156. Having violated the OMFWSA, Wash Wag is liable to Pierce and the Ohio Collective Class Members pursuant to Ohio R.C. § 4111.03 for the full amount of their unpaid overtime; liquidated damages; costs; and reasonable attorneys' fees.

### COUNT III: VIOLATION OF THE OHIO PROMPT PAYMENT ACT, O.R.C § 4113.51
### (Asserted By Pierce Individually).

157. Pierce restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

158. The Ohio Prompt Pay Act ("OPPA") required Defendant to pay all wages, including unpaid overtime, on or before the first day of each month, for wages earned by Pierce and those similarly situated during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by Pierce during the last half of the preceding calendar month. *See* Ohio R.C. § 4113.15(A).

159. Pierce was not paid all wages due within 30 days of their performing the work that entitled him to overtime. *See* Ohio R.C § 4113.15(B).

160. Pierce's unpaid wages remain unpaid for more than 30 days beyond his regularly scheduled payday.

161. Pierce has been harmed and continues to be harmed by Defendant's acts and/or omissions as described herein and is entitled to the greater of $200.00 or an additional six percent on the total amount of wages due. *See* Ohio R.C. § 4113.15 (C).

### PRAYER FOR RELIEF.

WHEREFORE, Pierce requests judgment in her favor against Defendant, containing the following relief:

(a) Designating this action as a collective action on behalf of Pierce and the Collective they represent pursuant to the Fair Labor Standards Act, issuing notice pursuant to 29 U.S.C. § 216(b) to FLSA Collective Class Members apprising them of the pendency of this action, which will permit them to assert timely FLSA claims in this action by filing individual

consent to sue forms pursuant to 29 U.S.C. § 216(b), and equitably tolling the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. § 216(b);

(b) Designating this action as a collective action on behalf of Pierce and the Ohio Collective Class Members she represents pursuant to O.R.C. §4111.10(C)

(c) Designating each Pierce as a representative for both the FLSA Collective and the Ohio Law Collective;

(d) Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq;

(e) Awarding Pierce and the Collective unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(f) Awarding pre-judgment and post-judgment interest as provided by law;

(g) Awarding reasonable attorneys' fees and costs; and

(h) Awarding such other and further relief that this Court deems appropriate.

 

Respectfully submitted,

*/s/Chris P. Wido*
Chris Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**
25825 Science Park Drive, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email:  Chris.Wido@Spitzlawfirm.com
*Attorney for Plaintiff Holly Pierce*

## JURY DEMAND

Plaintiff Holly Pierce demands a trial by jury by the maximum number of jurors permitted.

*/s/Chris P. Wido*
Chris P. Wido (0090441)
**SPITZ, THE EMPLOYEE'S ATTORNEY**